# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

NURDAN MacGAFFICK,

Plaintiff,

v.                                                    5:15-CV-778
(DNH/ATB)

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

PETER W. ANTONOWICZ, ESQ., for Plaintiff
TOMASINA DiGRIGOLI, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## REPORT-RECOMMENDATION

This matter was referred to me for report and recommendation by the Honorable David N. Hurd, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). This case has proceeded in accordance with General Order 18.

## I.   PROCEDURAL HISTORY

Plaintiff protectively filed an application for Disability Insurance Benefits ("DIB") on May 2, 2012, alleging disability beginning May 1, 2009. (Administrative Transcript ("T") at 22, 171-72). The application was denied initially on September 12, 2012. (T. 84-100). Administrative Law Judge ("ALJ") Gregory M. Hamel held a hearing on October 10, 2013, at which plaintiff and vocational expert ("VE") Matthew Lampley testified. (T. 46-83). On December 27, 2013, the ALJ found plaintiff was not disabled. (T. 19-36). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on March 3, 2015. (T.

1–10).

## II. GENERALLY APPLICABLE LAW

### A. Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational

factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

### B.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d at 417; *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859

F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id*. *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III. FACTS

As of the date of the administrative hearing on October 10, 2013, plaintiff was 42 years old. (T. 51). She resided with her husband and her seventeen year old son. (T. 54). After graduating high school in regular education classes, plaintiff completed four years of study at a university in Turkey, and subsequently obtained a bachelor's degree in the United States. (T. 51-52). Plaintiff's previous employment included work as a resident advisor at a pre-release facility for inmates nearing completion of their sentences, and, most recently, as a child care provider at an Air Force facility when her husband was stationed in Germany. (T. 75-76, 221). Plaintiff left this position in June 2008 when her husband was transferred to Texas. (T. 53).

4

Plaintiff was diagnosed with systemic lupus erythematosus[1] ("SLE") in April 2009, although she first developed symptoms in 2004, including Raynaud's phenomenon[2], cold sensitivity, hair loss, easy bruising, fatigue, hand and knee pain, and swelling. (T. 341). She was subsequently diagnosed with fibromyalgia, and had sought treatment for back pain and numbness in her legs. (T. 343).

After plaintiff suffered a series of heart palpitations in 2012, her primary care physician diagnosed her with anxiety, and prescribed medication. (T. 343-45). Treatment notes also document symptoms of obsessive compulsive disorder ("OCD"). (*Id.*). At her hearing, plaintiff testified that, as a result of her OCD she would check the stove "like 30, 40 times" to make sure that it was turned off. (T. 55). She further testified that the stress and anxiety related to her OCD increased her fibromyalgia pain, making it difficult to concentrate and complete ordinary tasks. (T. 55-59, 69).

The ALJ's decision provides a detailed statement of the medical and other evidence of record. (T. 15-18). Rather than reciting this evidence at the outset, the court will discuss the relevant details below, as necessary to address the issues raised by plaintiff.

## IV.   THE ALJ'S DECISION

The ALJ determined that plaintiff met the insured status requirements through

---

[1] SLE is an autoimmune disease in which the body's immune system mistakenly attacks healthy tissue. https://www.nlm.nih.gov/medlineplus/ency/article/000435.htm.

[2] Reynaud's phenomenon occurs when smaller arteries that supply blood to the skin narrow in response to cold temperatures or stress, limiting circulation and causing the body, typically the fingers and toes, to feel numb and cold. http://www.mayoclinic.org/diseases-conditions/raynauds-disease/basics/definition/con-20022916

December 31, 2013, and that plaintiff had not engaged in substantial gainful activity since her alleged onset date of May 1, 2009. (T. 24). The ALJ found that plaintiff had the following severe impairments at step two of the sequential evaluation: SLE, fibromyalgia with Raynaud's phenomenon, OCD, and anxiety disorder. (T. 24-25). At the third step, the ALJ determined that plaintiff's impairments did not meet or medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P. (T. 25-26).

The ALJ found at step four of the analysis that plaintiff had the RFC to perform light work, except that plaintiff could perform only routine and repetitive tasks that did not require more than occasional contact with the public or with co-workers. (T. 26-30). In making the RFC determination, the ALJ stated that he considered all of the plaintiff's symptoms, and considered the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529" and Social Security Rulings ("SSRs") 96-4p and 96-7p. (T. 26-27). Finally, the ALJ stated that he considered opinion evidence pursuant to 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p. (T. 27).

The ALJ also found that plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that plaintiff's statements regarding the intensity, persistence, and limiting effects of those symptoms were not entirely credible in light of the record evidence. (T. 27-28). The ALJ next determined that plaintiff would not be able to perform her past relevant work as a child care

attendant or as a residence counselor. (T. 30). Relying on the VE testimony, the ALJ found that plaintiff would be able to perform jobs such as nut and bolt assembler, bench assembly worker, table worker, and final assembler, all of which were classified as either light or sedentary unskilled occupations. (T. 32). Accordingly, the ALJ determined that plaintiff was not disabled from the alleged onset date, May 1, 2009, through the date of the decision. (T. 31-32).

## V. <u>ISSUES IN CONTENTION</u>

Plaintiff raises the following arguments:

1. The ALJ's RFC assessment was not supported by substantial evidence due to the ALJ's failure to properly evaluate the medical opinions and other evidence. (Pl.'s Br. at 8-13) (Dkt. No. 16).

2. The Commissioner erred by retaining consultative examiners, rather than contacting a treating source for a consultative opinion. (Pl.'s Brief at 17-19).

3. The ALJ's credibility finding was not supported by substantial evidence. (Pl.'s Br. at 14-17).

Defendant argues that the Commissioner's determination was supported by substantial evidence and should be affirmed. (Def.'s Br. at 6-27) (Dkt. No. 14). For the following reasons, this court agrees with the defendant and will recommend dismissing the complaint.

# DISCUSSION

## VI.   RFC EVALUATION/TREATING PHYSICIAN

### A.   Legal Standards

#### 1.   RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ."  A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R §§ 404.1545, 416.945.  *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)).  An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183; *Sullivan v. Secretary of HHS*, 666 F. Supp. 456, 460 (W.D.N.Y. 1987)).  The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical

facts, and non-medical evidence. *Trail v. Astrue*, No. 5:09-CV-1120, 2010 WL 3825629 at *6 (N.D.N.Y. Aug. 17, 2010) (citing Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7).

## 2.    Treating Physician[3]

"Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record . . . ." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The ALJ must properly analyze the reasons that a report of a treating physician is rejected. *Halloran*, 362 F.3d at 32-33. An ALJ may not arbitrarily substitute his own judgment for competent medical opinion. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).

## B.    Application

It is the province of the ALJ to resolve genuine conflicts in the record. *Veino*, 312 F.3d at 588. However, the Commissioner need not "reconcile explicitly every shred of medical testimony." *Galiotti v. Astrue*, 266 F. App'x 66, 66 (2d Cir. 2008) (citing *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983)). Here, the ALJ resolved conflicts between the various medical opinions by assigning the greatest weight to

---

[3] Plaintiff's counsel repeatedly, and erroneously, cited *Orn v. Astrue,* 495 F.3d 625 (9th Cir. 2007) in his brief as "[t]he reasoning of the Second Circuit Court of Appeals" with respect to the treating physician rule. (Pl.'s Br. at 12-13). This court will apply the treating physician rule as set forth in the Second Circuit decisions cited herein.

those opinions that he deemed most consistent with plaintiff's overall treatment record and activities. In doing so, the ALJ appropriately evaluated the conflicting medical evidence, and made an RFC finding that was consistent with the overall record. *See Matta v. Astrue*, 508 F. App'x. 53, 56 (2d Cir. 2013) (although ALJ's conclusion did not perfectly correspond with any of the opinions of medical sources, ALJ was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole). In light of the ALJ's detailed analysis of plaintiff's medical history, the relevant medical opinions, and plaintiff's activities of daily living, this court concludes that his RFC determination was supported by substantial evidence, as summarized below.

### 1. Physical Limitations

Plaintiff contends that the ALJ did not properly weigh the restrictive opinions of plaintiff's primary treating physician, Dr. Reo Peniston, and plaintiff's treating rheumologist, Dr. Hom Neupane, and thus erred in finding that plaintiff was capable of performing light work. (Pl.'s Br. at 8-13). This court disagrees, and concludes that the ALJ's RFC assessment of plaintiff's physical impairments was supported by substantial evidence.

While the ALJ considered Dr. Peniston's treatment notes as part of his RFC determination, he assigned limited weight to Dr. Peniston's opinions regarding plaintiff's functional limitations. (T. 29). On September 24, 2013, Dr. Peniston completed an RFC questionnaire that provided his opinion that plaintiff could only sit for thirty minutes at one time, and could only stand for fifteen minutes at one time

before needing to alternate positions. (T. 366). Dr. Peniston also opined that plaintiff was capable of sitting for a total of four hours, and standing or walking for a total of two hours during an eight hour workday. (*Id*.). In his opinion, plaintiff could never twist, crouch, or climb ladders, but could occasionally stoop and climb stairs. (T. 367). He also concluded that plaintiff would require two or three unscheduled breaks during the workday, and that she would likely be absent from work about three day per month as a result of her impairments. (T. 366, 368). Dr. Peniston also opined that plaintiff needed to avoid all exposure to extreme cold.[4] (T. 368).

The ALJ similarly assigned limited weight to Dr. Neupane's November 27, 2013 opinion. Dr. Neupane opined that plaintiff could sit for a total of four hours each workday, could stand or walk for about two hours total each workday, and could never lift greater than ten pounds. (T. 387-93). He concluded that plaintiff would require two or three unscheduled breaks each workday, and would likely miss an average of four days per month due to her impairments. (T. 390, 392). He further opined that plaintiff could occasionally twist, stoop, crouch, and climb ladders or stairs, and should avoid all exposure to extreme cold, fumes, odors, dusts, gases, cigarette smoke, and chemicals. (T. 392).

The ALJ provided several reasons for assigning these opinions limited weight. First, the ALJ cited the inconsistency between both physicians' treatment notes and

---

[4] The ALJ did not address plaintiff's need to avoid extreme cold temperatures or other environmental restrictions in the RFC determination, but such limitations would not significantly diminish her ability to perform light or sedentary work. SSR 96-9p, 1996 WL 374185, at *9; *see Spina v. Colvin*, No. 5:11-CV-1496, 2014 WL 502503, at *8 (N.D.N.Y. Feb. 7, 2014) (citing *Berrios v. Colvin*, No. 3:12-CV-970, 2013 WL 4647704, at *11 (N.D.N.Y. Aug. 29, 2013).

their restrictive opinions. (T. 29). On September 30, 2013, Dr. Peniston noted that plaintiff's SLE and fibromyalgia symptoms had been well-controlled with medication. (T. 355). Dr. Neupane's November 28, 2013 treatment notes described plaintiff's SLE as "not active at this point" and controlled by medication. (T. 385). During her November 28, 2013 visit to Dr. Neupane, plaintiff reported "some improvement of the fibromyalgia pain." (T. 382). Dr. Neupane recommended exercise, improved sleep habits, and a healthy diet as treatment for plaintiff's fibromyalgia. (T. 385-86). During visits, plaintiff complained of fatigue, joint tenderness, back pain, and numbness in her left leg, but physical examinations showed intact motor strength, reflexes, and grip strength, and normal range of motion in all extremities. (T. 28, 299-300, 341-43). The ALJ further supported his conclusions by citing treatment notes from other providers who found that plaintiff's SLE and fibromyalgia symptoms were adequately controlled, as well as diagnostic images of plaintiff's lumbar spine that did not depict any significant issues. (T. 28, 248, 250, 252-53, 256, 344, 376, 380).

The ALJ also contrasted Dr. Peniston and Dr. Neupane's findings regarding plaintiff's ability to sit and stand with plaintiff's daily activities. (T. 29). Plaintiff testified at her October 2013 hearing that she was able to prepare simple meals, load the dishwasher, drive to doctor appointments or the drug store, and attend church. (T. 57-58). During her July 2012 consultative examination, plaintiff reported that she could cook, clean, do laundry, and shop, but that she had difficulty with these activities when her SLE would flare up. (T. 291). In her application for benefits, plaintiff reported that she was able to prepare simple meals, clean, do laundry, go shopping on a weekly basis,

and attend her son's basketball games. (T. 205-207).

In reaching his RFC determination regarding plaintiff's physical limitations, the ALJ gave "significant weight" to the opinion of Dr. Pamela Tabb, who performed a consultative examination of plaintiff on July 24, 2012. (T. 29, 290-93). During the examination, plaintiff described her current SLE symptoms as a "butterfly rash" on her face and an abnormal blood test. (T. 290). She told Dr. Tabb that she had flare ups of pain in her hands, hips, and knees five times per month, each lasting for one or two days, but that she was not in pain during the examination. (*Id.*).

Dr. Tabb noted that plaintiff did not appear to be in any acute distress, that she had a normal gait, and that she was able to walk on heels and toes without difficulty. (T. 291). Plaintiff did not need any help changing for the examinations, or getting on and off the examination table. (*Id.*). She was able to rise from a chair without difficulty, but reported hip pain when attempting to squat. (*Id.*). Dr. Tabb found that plaintiff had normal motor strength, full grip strength, and full range of motion in all extremities. (T. 292). Plaintiff's joints were stable and non-tender, although she experienced pain in her right knee during movement. (*Id.*). Based on her examination, Dr. Tabb opined that plaintiff had no restrictions for physical activities. (T. 293).

The ALJ also gave "great weight" to the opinion of Dr. Nancy Armstrong, a non-examining state consultant who reviewed plaintiff's medical records, including Dr. Tabb's consultative examination report, on December 13, 2012. (T. 29, 306-307). Based on the available record evidence, Dr. Armstrong opined that plaintiff could occasionally lift up to twenty pounds and frequently lift up to ten pounds; could stand

for a total of about six hours in an eight hour workday; could sit for about six hours in an eight hour workday; and could occasionally climb, balance, stoop, kneel, crouch, and crawl. (T. 29, 88).

The ALJ concluded that Dr. Armstrong and Dr. Tabb's opinions were consistent with the record evidence as a whole, including the previously discussed treatment notes of Dr. Peniston and Dr. Neupane. (T. 29). Because the ALJ explained his rationale for discounting the treating physicians' opinions and assigning greater weight to the opinions of Dr. Armstrong and Dr. Tabb, the ALJ's physical RFC determination was supported by substantial evidence.

### 2. Mental Limitations

As noted above, the ALJ limited plaintiff to routine and repetitive tasks which did not require more than occasional contact with co-workers or the public. (T. 26). Plaintiff argues that the ALJ did not properly weigh the medical evidence regarding plaintiff's mental impairments. (Pl.'s Br. at 11). This court disagrees, and concludes that the ALJ's assessment of plaintiff's mental impairments was supported by substantial evidence.

In reaching the mental RFC determination, the ALJ gave great weight to certain portions of consultative psychiatric examiner Dr. Jeanne Shapiro's July 24, 2012 opinion, namely: that plaintiff was capable of following and understanding simple instructions and directions; that plaintiff was capable of performing simple tasks independently; that plaintiff had no more than moderate limitations in social functioning; and that plaintiff could deal appropriately with stress most of the time. (T.

29, 288). The ALJ discounted Dr. Shapiro's opinion that plaintiff might have difficulty maintaining a regular schedule because she drove only when necessary and did not use public transportation. (T. 29, 288-89). The ALJ found this conclusion was not consistent with plaintiff's testimony that, although she did not drive often, she was able to drive herself to medical appointments and the pharmacy. (T. 29, 57-58).

In assessing plaintiff's mental RFC, the ALJ noted that plaintiff was cooperative and responsive to questions during the consultative examination, and that Dr. Shapiro described her manner of relating, social skills, and overall presentation as "adequate." (T. 26, 287). She made appropriate eye contract during the examination, and her thought processes were coherent and goal directed. (T. 287). Dr. Shapiro described plaintiff's mood as slightly anxious, but found that her attention, concentration, and memory skills were grossly intact. (T. 288). Plaintiff was able to complete all the requested tests, including counting, simple calculations, serial 3s, and recall of recited objects and numbers. (T. 26, 288).

The ALJ also assigned "significant weight" to the opinion of a non-examining state consultant, Dr. Martha Totin, who concluded that plaintiff was moderately limited in her ability to maintain attention and concentration for extended periods, but was able to carry out both simple and detailed instructions, sustain an ordinary routine without supervision, and work in coordination with or in proximity to others without distraction. (T. 89-90). In evaluating other record evidence, the ALJ considered treatment notes from Dr. Peniston, who had prescribed plaintiff medication for anxiety and obsessive compulsive disorder. (T. 26, 58, 262-63). During office visits in

15

February and May 2012, Dr. Peniston described plaintiff's anxiety as well-controlled with medication. (T. 262, 264). In November 2013, plaintiff reported that she felt better about her anxiety issues and stress management. (T. 382). Dr. Peniston also opined in November 2013 that plaintiff was capable of performing low stress work. (T. 389).

The ALJ assigned limited weight to the opinion of Nurse Practitioner Alexander Eller, who found that plaintiff had marked restrictions in social functioning, dealing with stress, and carrying out complex instructions. (T. 345-46). N.P. Eller also opined that plaintiff would be absent from work about three days per month due to her impairments. (T. 346). The ALJ discounted this opinion due to its inconsistency with the record and Dr. Shapiro's examination findings, and because N.P. Eller was not an acceptable medical source. (T. 26).

At best, plaintiff's complaints regarding the RFC are premised upon a disagreement over how the ALJ resolved arguably conflicting evidence about plaintiff's physical and mental impairments. As stated above, it is the province of the ALJ to resolve such conflicts in the evidence. *Galiotti*, 266 F. App'x at 67. In addition, the report of consultative examiners, such as Dr. Tabb and Dr. Shapiro, may serve as substantial evidence upon which the ALJ may base his decision. *Herb v. Colvin*, No. 14-CV-156, 2015 WL 2194513, at *5 (W.D.N.Y. May 6, 2015) (citing *Finney ex rel. B.R. v. Colvin*, No. 13-CV–543A, 2014 WL 3866452, at *7 (W.D.N.Y. Aug. 6, 2014) (Rep't-Rec.)); *Simmons v. Comm'r of Soc. Sec.*, No. 13-CV-5504, 2015 WL 2182977, at *16 (S.D.N.Y. May 8, 2015) (citing *Mongeur*, 722 F.2d at 1039). An ALJ may also

rely upon a state agency consultant's opinion, such as that provided by Dr. Armstrong and Dr. Tobin, where it is supported by other record evidence. *See Swan v. Astrue*, No. 09-CV-486-S, 2010 WL 3211049, at *5 (W.D.N.Y. August 11, 2010) ("State agency medical consultants are qualified experts in the evaluation of disability claims and as such, their opinions may constitute substantial evidence if they are consistent with the record as a whole."). Therefore, the ALJ's determination that plaintiff could perform light work with certain non-exertional limitations, was supported by substantial evidence.

### 3.    Selection of Consultative Examiner

Plaintiff contends that the Commissioner committed legal error requiring remand by retaining Dr. Tabb and Dr. Shapiro as consultative examiners, rather than contacting plaintiff's treating sources. (Pl.'s Br. at 17-19). This court disagrees, and concludes that at most, the Commissioner's failure to explain the rationale for selecting the consultative examiners was harmless error.

"While a treating physician is 'ordinarily' the preferred source to perform an additional examination provided that he is 'qualified, equipped, and willing' to do so for the prescribed fee, 20 C.F.R. §§ 404.1519h, 416.919h, this preference is not absolute, and the regulations provide a non-exhaustive list of situations where another source may be consulted, *id*. §§ 404.1519i, 416.919i." *McGinnis v. Colvin*, No. 1:12-CV-00219-MOC, 2013 WL 3353836, at *5 (W.D.N.C. July 3, 2013). Examples of reasons why the Commissioner would need to order a consultative examination conducted by a non-treating source include "inconsistencies in the treating physician's

reports, a nonproductive or uncooperative treating physician, or one who consistently fails to provide timely reports, and an inexperienced or ill-equipped source, or one who is unwilling to perform the exam." *Nash v. Astrue*, No. CA 09-342, 2012 WL 3238226, at *14 (D. Del. Aug. 7, 2012).

In this case, plaintiff does not assert that she previously asked the Commissioner to use any of her treating sources as a consultant, or timely objected to the use or consideration of independent consultative examiners.[5] (T. 49). Under those circumstances, the failure to explain why treating sources were not used as consultants would not, in this court's view, constitute an error, or would be harmless. *See Nash v. Astrue*, 2012 WL 3238226, at *14; *McGinnis v. Colvin*, 2013 WL 3353836, at *5 & n. 63 (distinguishing *Moody v. Barnhart*, 114 F. App'x 495 (3d Cir. 2004)). In addition, the ALJ allowed plaintiff an opportunity to submit additional evidence from treating sources, including Dr. Neupane's November 27, 2013 opinion. (T. 82-83, 378-93). This opportunity to supplement the record with additional treating source reports further supports this court's conclusion that any procedural error in administration of the consultative examinations was harmless. *Fink v. Barnhart*, 123 Fed. App'x 146, 148 (5th Cir. 2005).

## VII.  CREDIBILITY

### A.    Legal Standards

"An [ALJ] may properly reject [subjective complaints] after weighing the

---

[5] Defendant correctly points out that, based on the record evidence, plaintiff did not have a treating psychiatrist or psychologist at the time of the July 2012 psychiatric consultative examination. (Def. Br. at 15).

objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, No. 96 CIV 9435, 1999 WL 185253, at *5 (S.D.N.Y. March 25, 1999)).  To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record.  *See* 20 C.F.R. § 416.929; *see also Foster v. Callahan*, No. 96-CV-1858, 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ."  20 C.F.R. § 416.929(a).  Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to function.  20 C.F.R. § 416.929(c).  When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any

19

other factors concerning claimant's functional limitations and restrictions due to symptoms.  20 C.F.R. § 416.929(c)(3).

## B.  Application

 The ALJ found that plaintiff's testimony regarding the intensity, persistence, and limiting effects of her impairments was not entirely credible.  (T. 27-28).  Plaintiff contends that the ALJ failed to support this credibility determination with substantial evidence by failing to adequately consider the seven factors listed above. (Pl.'s Br. at 14-17).  This court disagrees.

The ALJ made her credibility determination after concluding that plaintiff's daily activities and the medical evidence were inconsistent with plaintiff's claimed limitations.  (T. 27-28).  The ALJ cited record evidence that plaintiff was able to perform household chores, cook, and attend her son's basketball games. (T. 28, 205-207).  The ALJ also noted inconsistencies between plaintiff's description of her symptoms and the medical evidence. (T. 27-28).  Finally, the ALJ found plaintiff's hearing testimony to be "evasive" in light of plaintiff's educational background and otherwise articulate presentation. (T. 27-28).  *See Aponte v. Sec'y, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) ("It is the function of the [Commissioner], not [the reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant.").  Thus, because the ALJ explained his credibility determination, and this court can determine the rationale of the ALJ's decision, that credibility determination was supported by substantial evidence. *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013).

## VIII. STEP FIVE

Plaintiff did not raise any direct challenge to the ALJ's reliance upon the VE testimony, so this court will only briefly address the issue. The ALJ's hypothetical question to the VE mirrored his RFC determination. (T. 75-82). Because this court has found that the ALJ's RFC determination was supported by substantial evidence, it also finds that the ALJ's determination at step five, and the ultimate determination of disability, were similarly supported by substantial evidence.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and plaintiff's complaint be **DISMISSED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated:  July 28, 2016

Hon. Andrew T. Baxter
U.S. Magistrate Judge